**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

KIMBERLY AUSTIN, *individually, and on behalf
of a class of similarly situated persons*,

        Plaintiff,

    v.

LAKEVIEW LOAN SERVICING, LLC,
and LOANCARE, LLC,

        Defendants.

Case No.   1:20-cv-01296

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

1.     Plaintiff Kimberly Austin, on behalf of herself and all others similarly situated, alleges breaches of contract and violations of the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code, Com. L., § 14-201 *et seq.*, and Maryland Consumer Protection Act ("MCPA"), Md. Code, Com. L., § 13-101 *et seq.* against Defendants Lakeview Loan Servicing, LLC and LoanCare, LLC.

2.     Defendant Lakeview Loan Servicing, LLC ("Lakeview") is the fourth largest mortgage-loan servicer in the country.  On its website, Lakeview claims that it "helps" more than 1.4 million customers per year with payment of their mortgages.

3.     LoanCare, LLC ("LoanCare") is a mortgage loan subservicer that performs servicing-related functions with regard to the mortgage loans that Lakeview services, including Plaintiffs' loans.

4.     Defendants routinely violate state law, and breach the uniform terms of borrowers' mortgages ("Uniform Mortgages") by charging and collecting illegal processing fees ("Pay-to-Pay Fees") when borrowers make their monthly mortgage payments by telephone, by automated

telephone system payment ("Interactive Voice Response" or "IVR") or online ("Pay-to-Pay Transactions").

5.       Defendants charge borrowers Pay-to-Pay Fees of up to $15.00 for payment over the telephone, up to $12.00 for IVR payment and up to $10.00 for online payment.

6.       On information and belief, the actual cost for Defendants to process online mortgage payment transactions is very low—well below the Pay-to-Pay Fees that Defendants charge mortgagers. Defendants pocket the difference as pure profit.

7.       Maryland law prohibits Defendants from misrepresenting their rights in connection with collecting mortgage payments. Yet Defendants represent to borrowers that they have the right to collect Pay-to-Pay Fees, even though Pay-to-Pay Fees are found nowhere in the Uniform Mortgages and are not permitted. Defendants are not permitted under state law or the Uniform Mortgages to convert borrowers' attempts to pay their mortgages into a profit center for itself.

8.       The Federal Housing Administration ("FHA") requires all loan servicers, including Defendants, to be approved by the FHA before servicing any loans.  Loan servicers, like Defendants, are paid loan servicing fees out of the interest paid by FHA borrowers.  In exchange for the regular loan servicing fees paid by from borrowers' monthly interest payments, Defendants and other FHA approved loan servicers agree to follow the FHA's rules regarding loan servicing, as implemented by the Secretary of Housing and Urban Development ("HUD").

9.       In addition, FHA-approved loan servicers, like Defendants, may collect additional revenue for additional work performed for the borrower. But the uniform FHA mortgage agreement explicitly limits additional fees only to those specific fees authorized by the Secretary of HUD. Exhibit A, ¶ 8.

10.       Despite their uniform contractual obligations to charge only fees explicitly allowed under the Uniform Mortgages and applicable law, and for FHA mortgages, only those fees approved

by the HUD Secretary, Defendants leverage their position of power over homeowners and demand exorbitant Pay-to-Pay Fees. Even if some fee were allowed, the mortgage uniform covenants and applicable law only allow Defendants to pass along the actual costs of fees incurred to it by the borrowers—here, only a few cents per transaction.

11.     Plaintiff paid these Pay-to-Pay Fees and she brings this class action lawsuit individually and on behalf of all similarly situated putative class members, to recover the unlawfully charged Pay-to-Pay Fees and to enjoin Defendants from continuing to charge these unlawful fees.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S. Code § 1332(d), because diversity exists between the Defendants and at least one class member and the matter in controversy exceeds $5,000,000.

13.     This Court has personal jurisdiction because Defendants each transact business in Maryland and commits torts in Maryland, as described in this Complaint.

14.     Venue is proper because a substantial portion of the events alleged herein occurred within this District.

## PARTIES

15.     Plaintiff Kimberly Austin (individually, "Plaintiff" or "Ms. Austin") is a natural person residing in Abingdon, Maryland who has an FHA-insured mortgage loan serviced and/or subserviced by Defendants. Ms. Austin makes loan payments online, and each time she does so, Defendants charge her a Pay-to-Pay Fee. For example, and as detailed below, on or about October 1, 2019, January 10, 2020, and March 6, 2020, Ms. Austin made mortgage payments online, and each time, Defendants charged Ms. Austin a $5.00 Pay-to-Pay Fee.

16.     Defendant Lakeview Loan Servicing, LLC is a Delaware limited liability company with a principal place of business at 4425 Ponce de Leon Boulevard, 5th Floor, Coral Gables, Florida, 33146.

17.     Defendant LoanCare, LLC is a Virginia limited liability company with a principal place of business at 3637 Sentara Way, Virginia Beach, Virginia 23452.

## APPLICABLE LAW AND SERVICING RULES

**Maryland Consumer Debt Collection Act**

18.     The Maryland Consumer Debt Collection Act offers broad protection to consumers from underhanded methods used by unscrupulous creditors and debt collectors. It applies more broadly than the FDCPA.

19.     The MCDCA defines "collector" as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Md. Code, Com. L., § 14-201(b). It allows recovery against both creditors collecting debts in their own names, and those whose primary business is debt collection.

20.     A "consumer transaction" under the MCDCA is "any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes." Md. Code, Com. L., § 14-201(c).

21.     The MCDCA prohibits "collectors" from claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist. *Id.* § 14-202(8). Seeking to collect a debt that includes "an unauthorized type of charge" violates this provision of the MCDCA.

22.     The MCDCA also makes it illegal to violate the federal Fair Debt Collection Practices Act ("FDCPA"). *Id.* § 14-202(11).

**Maryland Consumer Protection Act**

23.     The MCPA prohibits unfair or deceptive trade practices, including in the collection of

consumer debts. *See* Md. Code, Com. L., § 13-301; *id.* § 13-303(5).

24.     The MCPA defines "consumer" as an "actual or prospective purchaser, lessee, or recipient of consumer goods, consumer services, consumer realty, or consumer credit." *Id.* § 13-101(c)(1).

25.     Under the MCPA, "consumer debt" and "consumer realty" mean, "respectively, . . . debts or obligations" and "real property" "which are primarily for personal, household, family, or agricultural purposes." *Id.* § 13-101(d)(1).

26.     A violation of the MCDCA is a *per se* violation of the MCPA. *Id.* § 13-301(14)(iii).

**FHA Servicing Rules**

27.     The Federal Housing Administration, an agency within the United States Department of Housing and Urban Development, "provides mortgage insurance on loans made by FHA-approved lenders throughout the United States and its territories."[1] The FHA "is the largest insurer of mortgages in the world, insuring over 47.5 million properties since its inception in 1934."[2]

28.     The FHA provides incentives to private lenders to make loans to would-be homebuyers whose creditworthiness and inability to contribute a significant down payment make it difficult for them to obtain a home loan on reasonable terms.

29.     To achieve that goal, "FHA mortgage insurance provides lenders with protection against losses as the result of homeowners defaulting on their mortgage loans. The lenders bear less risk because FHA will pay a claim to the lender in the event of a homeowner's default."[3]

---

[1] HUD.gov – The Federal Housing Administration, https://www.hud.gov/program_offices/housing/fhahistory (last visited on May 22, 2020).
[2] *Id.*
[3] *Id.*

30.     The FHA restricts who can make and service FHA loans. "Only FHA-approved Mortgagees may service FHA-insured Mortgages," and those "Mortgagees may service Mortgages they hold or that are held by other FHA-approved Mortgagees." *Id.*

31.     Defendants are FHA-approved Mortgagees.

32.     As FHA-approved Mortgagees, Defendants must annually "acknowledge that the Mortgagee is now, and was at all times throughout the Certification Period, subject to all applicable HUD regulations, *Handbooks*, Guidebooks, Mortgagee Letters, Title I Letters, policies and requirements, as well as Fair Housing regulations and laws including but not limited to 24 CFR § 5.105, Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act) and Title VI of the Civil Rights Act of 1964."[4]

33.     HUD's servicing requirements restrict the fees and charges an FHA-approved Mortgagee may collect from the typically lower-income FHA borrower. HUD Handbook 4000.1: *Single-Family Housing Policy*, https://www.hud.gov/sites/documents/40001HSGH.PDF (last accessed by counsel on May 22, 2020) (the "HUD Handbook").

34.     HUD makes clear "[t]he Mortgagee must fully comply with all of the following standards and procedures when servicing a Mortgage insured by the Federal Housing Administration." *Id.*

35.     These mandatory restrictions include limits on the types and amounts of fees and charges an FHA-approved Mortgagee may collect from a borrower.

36.     FHA-insured mortgages contain uniform covenants.

---

[4] *See*, FHA Lender Annual Certifications: Supervised and Nonsupervised Mortgagees, Changes Implemented 8/1/2016, https://www.hud.gov/sites/documents/SFH_COMP_SUPERNONSUPER.PDF (last visited on May 22, 2020) (emphasis added).

37.     In one such uniform covenant, the parties to the mortgage agree that "Lender may collect fees and charges *authorized* by the Secretary [of Housing and Urban Development]." Ex. A at ¶ 8 (emphasis added).

38.     This provision incorporates by reference HUD's limits on allowable fees.

39.     The HUD Handbook states that lenders:

> may collect certain reasonable and customary fees and charges from the Borrower after the Mortgage is insured *and as authorized by HUD* below. All fees *must* be:
>
> - reasonable and customary for the local jurisdiction;
>
> - based on the actual cost of the work performed or actual out-of-pocket expenses and not a percentage of either the face amount or the unpaid principal balance of the Mortgage; *and*
>
> - within the maximum amount allowed by HUD.

HUD Handbook at 559 (emphasis added). In other words, lenders may only collect fees that are authorized by HUD, and fees that are authorized by HUD are only those fees that meet all three of the specified criteria. Thus, for example, a fee that is within the maximum amount allowed by HUD but also generates a profit for the lender would not be allowed.

40.     To determine "the maximum amount allowed by HUD" for a fee, a lender must consult Appendix 3.0 of the HUD Handbook, which contains an exhaustive list of the servicing fees and charges authorized by HUD and the maximum amounts that may be charged for such fees.[5] Pay-to-Pay Fees are not on that list.

41.     The HUD Handbook further states "The Mortgagee must not charge the Borrower" for "costs of telephone calls, telegrams, personal visits with the Borrower, certified mail, or other

---

[5] In the PDF version of the HUD Handbook, the term "maximum amount allowed by HUD" contains a hyperlink that, when clicked, brings the reader to Appendix 3.0.

activities that are normally considered a part of a prudent Mortgagee's servicing activity." HUD Handbook at 560.

42. The HUD Handbook provides that a "Mortgagee may request approval from the National Servicing Center (NSC) for any fee, charge, or unusual service not specifically mentioned in this *SF Handbook.*" HUD Handbook at 600.

43. Based upon information and belief, the Pay-to-Pay Fees that Defendants collect from borrowers exceed its out-of-pocket costs, and thus violate mandatory HUD servicing rules that are incorporated into all FHA-insured mortgages. Moreover, because the Pay-to-Pay fees are both a cost in connection with a telephone call, and not included on Appendix 3.0, they, are not authorized.

## FACTUAL ALLEGATIONS

### The Mortgage-Servicer Industry

44. Mortgage lenders rarely service their own loans. In many cases, lenders specialize in the origination of the loan, but they are not equipped to handle the day-to-day administrative tasks that come with a mortgage. Instead of managing these duties in-house, they assign the servicing rights of their loans to a designated servicer—a company that specializes in the actual management and administration of mortgages.

45. A mortgage servicer and/or subservicer is a company that, in turn, handles the day-to-day administrative tasks of a mortgage loan, including receiving payments, sending monthly statements and managing escrow accounts.

46. Lakeview is a mortgage loan servicer that operates throughout the country.

47. LoanCare is a mortgage loan subservicer that operates throughout the country

48. Each time a mortgage borrower whose loan is serviced and/or subserviced by Defendants makes a payment over the phone or online, Defendants charge the borrower a Pay-to-Pay Fee of up to $15.00 for payment over the telephone, up to $12.00 for IVR payment and up to

$10.00 for online payment. Upon information and belief, LoanCare collects these Pay-to-Pay Fees at Lakeview's direction, and both Defendants share in the profits.

49.     The usual cost that a loan servicer pays to process Pay-to-Pay Transactions payments is much less for each transaction than the amounts Defendants charge Plaintiff and the putative class members.

50.     Therefore, the actual cost for Defendants to process telephone Pay-to-Pay Transactions is substantially below the amounts charged to borrowers for making those payments, and Defendants illegally pocket the difference as profit.

51.     The mortgages of Plaintiff and the proposed class that Defendants service and/or subservice are Uniform Mortgages; that is, they are FHA and/or Fannie Mae/Freddie Mac Uniform Instruments used when originating Single-Family residential mortgage loans.

52.     The Uniform Mortgages of Defendants' customers do not authorize Defendants to charge Pay-to-Pay Fees.

53.     At most, the mortgage uniform covenants allow Defendants to pass along only the actual cost of fees incurred by it to the borrower.

54.     Defendants violate the borrowers' Uniform Mortgages when they assesses such fees. Defendants frequently, intentionally, and persistently collect Pay-to-Pay Fees even though such fees are not authorized by the Uniform Mortgages and they therefore had no right to collect them.

*Plaintiff Austin*

55.     On or around October 7, 2016, Plaintiff Austin obtained a mortgage loan from First Home Mortgage Company secured by her home in Abingdon, Maryland (the "Mortgage Agreement"). The Mortgage Agreement is attached as **Exhibit A.**

56.     Ms. Austin obtained the mortgage loan secured by her property for personal, family, or household uses.

57.     Ms. Austin made timely mortgage payments and was not in default under the terms of the Mortgage Agreement.

58.     At some point, Lakeview acquired the servicing rights to the loan by way of an assignment. The Mortgage Agreement provides that "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender." *See* Ex. A, ¶ 12. Section 19, in turn, provides that if the Note is sold and the loan is served by a servicer other than the purchaser of the Note, then the mortgage loan servicing obligations to the borrower remain with the loan servicer (or may be transferred to a successor loan servicer) and are not assumed by the purchaser of the note unless otherwise provided by the Note purchaser. *See id.* ¶ 19. Thus, when Lakeview acquired the servicing rights to the loan, it became bound as an assignee to the obligations of the Mortgage Agreement as well.

59.      LoanCare is a subservicer operating on behalf of Lakeview.

60.     Ms. Austin makes loan payments online, and each time she does so, Defendants charge her a Pay-to-Pay Fee.

61.     For example, on or about October 1, 2019, January 10, 2020, and March 6, 2020, Ms. Austin made mortgage payments online, and each time, Defendants charged Ms. Austin a $5.00 Pay-to-Pay Fee.

62.     These fees are not authorized by the Mortgage Agreement.

63.     Defendants collect the Pay-to-Pay Fees even though they know such fees are not authorized under the Mortgage Agreement.

64.     Ms. Austin, like many borrowers, has an FHA mortgage, meaning that the mortgage is issued by an FHA-approved lender and insured by the FHA. The uniform covenants of the FHA mortgages state that the lender may only assess fees authorized by the Secretary of HUD.

65.     HUD permits servicers of FHA mortgages to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Handbook. *See* HUD Handbook 4000.1, FHA Single Family Housing Policy Handbook § III.A.1.f. Servicers seeking to assess fees "not specifically mentioned" in the Servicing Handbook must request approval from the National Servicing Center to charge such fees. *Id.* § III.A.1.f.(B). HUD prohibits servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity. *Id.* § III.A.1.f.(C).

66.     As set forth above, the HUD Handbook does not authorize Pay-to-Pay Fees. Defendants have not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees.

67.     Like other FHA mortgages, the Mortgage Agreement states that "Lender may collect fees and charges authorized by the Secretary." Ex. A, ¶ 13. By assessing Pay-to-Pay Fees not "authorized by the Secretary," Defendants violated the uniform covenants of the Mortgage Agreement.

68.     The Mortgage Agreement also states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." *Id.*, ¶ 13. "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions. *Id.*, p. 2 ¶ J. The Mortgage Agreement also states that the mortgage "shall be governed by Federal Law and the law of the jurisdiction in which the Property is located," i.e., Maryland law. *Id.*, ¶ 15.

69.     Defendants are "collectors" under the MCDCA because they are persons "collecting or attempting to collect an alleged debt arising out of a consumer transaction." *See* Md. Code, Com. L., § 14-201(b).

70.     The MCDCA prohibits "collectors" such as Defendants from claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist. *Id.* § 14-202(8).

71.     Defendants knew that the Mortgage Agreements of Plaintiff and the Class Members did not expressly authorize Defendants to collect Pay-to-Pay Fees, and at most permitted Defendants to assess amounts "disbursed" to process Pay-to-Pay Transactions. Despite this knowledge, Defendants represented to Ms. Austin that they had the right to collect Pay-to-Pay Fees and collected them from her. This conduct violated the MCDCA.

72.     By collecting Pay-to-Pay Fees from Ms. Austin in violation of the MDCA, Defendants collected fees that are "prohibited by Applicable Law," and thus breached that provision of the Mortgage Agreement as well.

73.     Even if Defendants are allowed to collect a fee under the auspice that it is a default-related fee under Paragraph 9 of the Mortgage Agreement, Defendants' demand for payment of Pay-to-Pay Fees was a direct breach of that paragraph, too. Paragraph 9 states that only "amounts *disbursed* by Lender under this Paragraph shall become additional debt of Borrower and be secured by this Instrument." Ex. A, ¶ 9. Defendants collected more than the amounts disbursed to process the Pay-to-Pay Transactions.

74.     Because the above provisions are contained in the "Uniform Covenants" section of the Mortgage Agreement, Defendants have breached their contracts on a class-wide basis.

75.     Prior to filing this Complaint, Ms. Austin made a written pre-suit demand upon Defendants.

76.     Defendants were given a reasonable opportunity to cure the breaches complained of herein but failed to do so.

## CLASS ACTION ALLEGATIONS

77.     Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of the following class of persons, subject to modification after discovery and case development:

**All persons (1) with a residential mortgage loan securing a property in Maryland, (2) serviced or subserviced by Lakeview, LoanCare, or both, and (3) and who paid a fee to Defendants for making a loan payment by telephone, IVR, at an ATM, or the internet, during the applicable statutes of limitations through the date a class is certified.**

78.     Excluded from the Class are the Defendants; any entities in which they have a controlling interest; their agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

79.     Members of the Class ("Class Members") are identifiable through Defendants' records and payment databases.

80.     Plaintiff proposes that she be appointed as class representative.

81.     Plaintiff and the Class have all been harmed by the actions of Defendants.

82.     Numerosity is satisfied. Upon information and belief, there are thousands of Class Members.  Individual joinder of these persons is impracticable.

83.     There are questions of law and fact common to Plaintiff and the Class, including, but not limited to:

  a.   Whether Defendants violated the MCDCA by charging Pay-to-Pay Fees not due;

  b.   Whether Defendants violated the MCPA by charging Pay-to-Pay Fees not due;

  c.   Whether Defendants breached the Class Members' mortgage agreements by charging Pay-to-Pay Fees not due;

  d.   Whether Defendants costs for the Pay-to-Pay Transactions are less than the amount it charged for Pay-to-Pay fees;

  e.   Whether Plaintiff and Class Members are entitled to injunctive relief;

    f.   Whether Plaintiff and Class Members are entitled to damages as a result of Defendants' actions; and

    g.   Whether Plaintiff and Class Members are entitled to attorney's fees and costs.

84.    Plaintiff's claims are typical of the claims of class members.  Defendants charged Plaintiff Pay-to-Pay Fees in the same manner as the Class Members.  Plaintiffs and the Class Members entered into uniform covenants in their Mortgage Agreements that prohibit Pay-to-Pay charges.  Alternatively, if Defendants are allowed under the Mortgage Agreements to charge Pay-to-Pay Fees, such amount is capped at the actual amounts disbursed by Defendants to process the Pay-to-Pay Transactions.

85.    Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class Members and she will fairly and adequately protect the interests of the Class.  Plaintiff has taken actions before filing this Complaint, by hiring skilled and experienced counsel, and by making a pre-suit demand on behalf of Class Members to protect the interests of the class.

86.    Plaintiff has hired counsel that is skilled and experienced in class actions and are adequate class counsel capable of protecting the interests of the class members.

87.    Common questions of law and fact predominate over questions affecting only individual Class Members, and a class action is the superior method for fair and efficient adjudication of this controversy.

88.    The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

**COUNT I**
**VIOLATION OF THE MARYLAND CONSUMER DEBT COLLECTION ACT**
**Md. Com. L., § 14-201 *et seq.***
**On Behalf of Plaintiff and the Class**

89.    Paragraphs 1 to 88 are incorporated by reference.

90.     The MCDCA defines "collector" as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Md. Code, Com. L., § 14-201(b). The MCDCA applies to Defendants because they are collecting or attempting to collect alleged debts arising out of consumer transactions.

91.     Plaintiff and the Class Members engaged in consumer transactions when they took out mortgages in order to acquire real property for personal, family, or household uses. Plaintiff took out the mortgage loan secured by her property and now serviced by Defendants for personal, family, or household uses. *See* Md. Code, Com. L., § 14-201(c).

92.     The MCDCA prohibits "collectors" such as Defendants from claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist. *Id.* § 14-202(8).

93.     Defendants knew that the Mortgage Agreements of Plaintiff and the Class Members did not expressly authorize Defendants to collect Pay-to-Pay Fees, and at most permitted Defendants to assess amounts "disbursed" to process Pay-to-Pay Transactions. Despite this knowledge, Defendants represented to Plaintiff and the Class Members that they had the right to collect Pay-to-Pay Fees and collected them from Plaintiff and the Class Members.

94.     The MCDCA also makes it illegal to violate the federal FDCPA. *Id.* § 14-202(11).The FDCPA makes it an illegal, unfair practice for a debt collector to undertake the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

95.     The Mortgage Agreements of Plaintiff and the Class Members do not expressly authorize Defendants to collect Pay-to-Pay fees. At most, the Mortgage Agreements permit Defendants to collect the actual amount disbursed to process the Pay-to-Pay transactions. Although

the Mortgage Agreements do not expressly authorize collection of Pay-to-Pay Fees, Defendants collected such fees anyway. In so doing, Defendants violated 15 U.S.C. § 1692f(1).

96.     By violating § 1692f(1), Defendants also violated the MCDCA.

97.     As a result of Defendants' violations of the MCDCA, Plaintiff and the Class Members were harmed.

### COUNT II
### VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT
#### Md. Com. L., § 13-101 *et seq.*
#### On behalf of Plaintiff and the Class

98.     Paragraphs 1 to 88 are incorporated by reference.

99.     The MCPA prohibits unfair or deceptive trade practices, including in the collection of consumer debts. Md. Code, Com. L., § 13-301; *id.* ¶ 13-303.

100.    Plaintiff and the Class Members are "consumers" within the meaning of the MCPA because they are purchasers of consumer realty and recipients of consumer credit. *See id.* § 13-101(c)(1).

101.    The mortgage loans taken out by Plaintiff and the Class Members are "consumer credit" under the MCPA because they are credit debts or obligations securing real property used primarily for personal, household, family, or agricultural purposes. *Id.* § 13-101(d).

102.    Defendants are "merchants" because they directly or indirectly makes available to consumers consumer services, realty, and/or credit. *Id.* § 13-101(g). The MCPA expressly applies to mortgage servicers. *Id.* § 13-316.

103.    Violations of the MCDCA are per se violations of the MCPA. Md. Code, Com. L., § 13-301(14)(iii). By violating the MCDCA, Defendants also violated the MCPA.

104.    As a result of Defendants' violations of the MCPA, Plaintiff and the Class Members were harmed.

## COUNT II
## BREACH OF CONTRACT
### On Behalf of Plaintiff and the Class

105.     Paragraphs 1 to 88 are incorporated by reference.

106.     Plaintiff and the Class Members are parties to contracts with Defendants. Defendants became bound as assignees to the mortgages held by Plaintiff and the Class Members when Defendants became the servicer and/or subservicer of their mortgage loans. Defendants breached their contracts with Plaintiff and the Class Members when they charged Pay-to-Pay Fees in violation of the Uniform Mortgages and in excess of the amounts actually disbursed by Defendants to pay for the cost of the Pay-to-Pay Transactions.

107.     Plaintiff and the Class Members suffered damages when Defendants violated their contracts with them by assessing Pay-to-Pay Fees.

108.     Plaintiff purchased a home subject to the Mortgage Agreement. *See* Ex. A.

109.     At some point, Lakeview acquired the servicing rights to the loan by way of an assignment. The Mortgage Agreement provides that "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender." *See* Ex. A, ¶ 12. Section 19, in turn, provides that if the Note is sold and the loan is served by a servicer other than the purchaser of the Note, then the mortgage loan servicing obligations to the borrower remain with the loan servicer (or may be transferred to a successor loan servicer) and are not assumed by the purchaser of the note unless otherwise provided by the Note purchaser. *See id.* ¶ 19. Thus, when Lakeview acquired the servicing rights to the loan, it became bound as an assignee to the obligations of the Mortgage Agreement as well.

110.     LoanCare is a subservicer operating on behalf of Lakeview.

111.     Ms. Austin makes loan payments online, and each time she does so, Defendants charge her a Pay-to-Pay Fee.

112.    For example, on or about October 1, 2019, January 10, 2020, and March 6, 2020, Ms. Austin made mortgage payments online, and each time, Defendants charged Ms. Austin a $5.00 Pay-to-Pay Fee.

113.    These fees are not authorized by the Mortgage Agreement.

114.    Defendants collect the Pay-to-Pay Fees even though they know such fees are not authorized under the Mortgage Agreement.

115.    Ms. Austin, like many borrowers, has an FHA mortgage, meaning that the mortgage is issued by an FHA-approved lender and insured by the FHA. The uniform covenants of the FHA mortgages state that the lender may only assess fees authorized by the Secretary of HUD.

116.    HUD permits servicers of FHA mortgages to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Handbook. *See* HUD Handbook 4000.1, FHA Single Family Housing Policy Handbook § III.A.1.f. Servicers seeking to assess fees "not specifically mentioned" in the Servicing Handbook must request approval from the National Servicing Center to charge such fees. *Id.* § III.A.1.f.(B). HUD prohibits servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity. *Id.* § III.A.1.f.(C).

117.    As set forth above, the HUD Handbook does not authorize Pay-to-Pay Fees. Defendants have not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees.

118.    Like other FHA mortgages, the Mortgage Agreement states that "Lender may collect fees and charges authorized by the Secretary." Ex. A, ¶ 13. By assessing Pay-to-Pay Fees not "authorized by the Secretary," Defendants violated the uniform covenants of the Mortgage Agreement.

119.   The Mortgage Agreement also states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." *Id.*, ¶ 13. "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions. *Id.*, p. 2 ¶ J. The Mortgage Agreement also states that the mortgage "shall be governed by Federal Law and the law of the jurisdiction in which the property is located," i.e., Maryland law. *Id.*, ¶ 15.

120.   Defendants are "collectors" under the MCDCA because they are persons "collecting or attempting to collect an alleged debt arising out of a consumer transaction." *See* Md. Code, Com. L., § 14-201(b).

121.   The MCDCA prohibits "collectors" such as Defendants from claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist. *Id.* § 14-202(8).

122.   Defendants knew that the Mortgage Agreements of Plaintiff and the Class Members did not expressly authorize Defendants to collect Pay-to-Pay Fees, and at most permitted Defendants to assess amounts "disbursed" to process Pay-to-Pay Transactions. Despite this knowledge, Defendants represented to Plaintiff and the Class Members that they had the right to collect Pay-to-Pay Fees and collected them from Plaintiff and the Class Members. This conduct violated the MCDCA.

123.   By collecting Pay-to-Pay Fees from Ms. Austin in violation of the MDCA, Defendants collected fees that are "prohibited by Applicable Law," and thus breached that provision of the Mortgage Agreement as well.

124.   Even if Defendants are allowed to collect a fee under the auspice that it is a default-related fee under Paragraph 9 of the Mortgage Agreement, Defendants' demand for payment of Pay-to-Pay Fees was a direct breach of that paragraph, too. Paragraph 9 states that only "amounts *disbursed*

by Lender under this Paragraph shall become additional debt of Borrower and be secured by this Instrument." Ex. A, ¶ 9. Defendants collected more than the amounts disbursed to process the Pay-to-Pay Transactions. This conduct also violated the Mortgage Agreement.

125.    Because the above provisions are contained in the "Uniform Covenants" section of the Mortgage Agreement, Defendants have breached their contracts on a class-wide basis.

126.    Plaintiff and the Class Members were damaged as a result of Defendants' breaches.

## COUNT IV
## UNJUST ENRICHMENT
### On Behalf of Plaintiff and the Class
### (pled in the alternative to breach of contract claims)

127.    Paragraphs 1 to 88 are incorporated by reference.

128.    Plaintiff and the Class Members conferred benefits on Defendants. Namely, Plaintiff and the Class Members paid Pay-to-Pay Fees to Defendants. Defendants knew and appreciated that Plaintiff and the Class Members conferred these benefits, and accepted them.

129.    Defendants' retention of these benefits is unjust because Defendants had no right to collect the Pay-to-Pay Fees under the Uniform Mortgages or applicable law.

130.    Plaintiff and the Class Members are entitled to restitution and Defendants are required to disgorge the benefits it unjustly obtained.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.    An order certifying the proposed class pursuant to Federal Rule of Civil Procedure 23 and appointing Plaintiff and her counsel to represent them;

2.    Monetary and/or equitable relief in an amount to be determined at trial;

3.    Punitive or exemplary damages;

4.    Pre- and post-judgment interest to the extent provided by law;

5.      Attorneys' fees and costs of suit, including costs of notice, administration, and expert fees; and

6.      Such other legal or equitable relief, including injunctive or declaratory relief, as the Court may deem appropriate.

### PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL ISSUES SO TRIABLE.

Dated: May 22, 2020                          Respectfully submitted,

*/s/ Hassan A. Zavareei*
Hassan A. Zavareei (Bar No. 18489)
Katherine M. Aizpuru (Bar No. 20007)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Tel.: (202) 973-0900
Fax: (202) 973-0950
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

James L. Kaufman (*pro hac vice* application to be filed)
BAILEY & GLASSER, LLP
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
Tel.: (202) 463-2101
Fax: (202) 463-2103
jkauffman@baileyglasser.com

*Attorneys for Plaintiff and the Proposed Class*