IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **KIMBERLY AUSTIN,** | * | |
| Plaintiff, | * | |
| v. | * | **Civil Action No. RDB-20-1296** |
| **LAKEVIEW LOAN SERVICING, LLC, and LOANCARE, LLC** | * | |
| | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Kimberly Austin ("Plaintiff" or "Austin") brings this putative class action against Defendants Lakeview Loan Servicing, LLC ("Lakeview") and LoanCare, LLC ("LoanCare"), alleging two violations of the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201, *et seq.*; a violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-301(14)(iii); breach of contract; and unjust enrichment. (*See* ECF No. 1.)[1] Specifically, Austin claims that the Defendants violated state law and breached the uniform terms of borrowers' mortgages by charging and collecting processing fees when borrowers made their monthly mortgage payments by phone or online. (*Id.* ¶ 4.) Presently pending is the Defendant LoanCare's Motion to Dismiss for Failure to State a Claim (ECF No. 15). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the

---

[1] The jurisdiction of this Court is predicated upon the Class Action Fairness Act and diversity of citizenship pursuant to 28 U.S.C. § 1332(d).

1

reasons stated herein, the Defendant LoanCare'ss Motion to Dismiss (ECF No. 15) is GRANTED and all claims against LoanCare are DISMISSED WITH PREJUDICE.

## BACKGROUND

This Court accepts as true the facts alleged in the Plaintiff's Complaint (ECF No. 1). Plaintiff Kimberly Austin is a Maryland resident. (ECF No. 1 ¶ 15.) On or around October 7, 2016, Plaintiff obtained a mortgage loan from First Home Mortgage Company, a lender approved by the Federal Housing Administration ("FHA"), and secured the loan with her home in Abingdon, Maryland. (*Id.* ¶¶ 55, 64.) This loan was also insured by the FHA. (*Id.* ¶ 64.) All FHA-insured mortgages contain uniform covenants. (*Id.* ¶ 36.) For example, FHA-insured loans provide that "Lender may collect fees and charges authorized by the Secretary [of Housing and Urban Development]." (*Id.* ¶ 37; Ex. A ¶ 13, ECF No. 1-1.) Austin's Mortgage Agreement also provided that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." (Ex. A ¶ 13, ECF No. 1-1.) "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." (*Id.* p. 2, ¶ J.) The Agreement also states that the mortgage "shall be governed by Federal Law and the law of the jurisdiction in which the Property is located." (*Id.* ¶ 15.) Finally, it also provides that "[t]he covenants and agreements of this Security Instrument shall bind . . . and benefit the successor and assigns of Lender." (*Id.* ¶ 12.)

At some point, Defendant Lakeview acquired the servicing rights to the Plaintiff's loan. (ECF No. 1 ¶ 58.) Defendant Lakeview is a Delaware limited liability company and an FHA-

approved loan servicer. (*Id.* ¶¶ 9, 16.) A mortgage servicer is a company that handles the day-to-day administrative tasks of a mortgage loan, including receiving payments, sending monthly statements, and managing escrow accounts. (*Id.* ¶ 45.) Defendant LoanCare is Virginia limited liability company and an FHA-approved mortgage loan "subservicer" that performs servicing-related functions with regard to the mortgages serviced by Lakeview. (*Id.* ¶¶ 3, 17.) LoanCare subserviced the Plaintiff's mortgage loan. (*Id.* ¶ 3.) Therefore, the Plaintiff made her monthly mortgage payments to LoanCare. (*Id.* ¶¶ 3, 48.) Austin alleges that she made timely mortgage payments and was never in default under the terms of the Mortgage Agreement. (*Id.* ¶ 57.)

When the Plaintiff made her monthly payments, she had options with respect to her payment method. The Plaintiff could make her payments by mail, or she could opt to pay by telephone, an automated telephone payment system, or online. (*Id.* ¶ 4.) However, if she chose one of these latter three methods, the Defendants would charge her a processing fee, here referred to as "Pay-to-Pay Fees." (*Id.*) When borrowers with loans serviced and/or subserviced by the Defendants made their monthly mortgage payments by phone their Pay-to-Pay Fee was as much as $15.00. (*Id.* ¶ 5.) If they made payment through the automated telephone payment system it was as much as $12.00. (*Id.*) The online Pay-to-Pay Fee was as much as $10.00. (*Id.*) The Plaintiff states that she makes her loan payments online, and that each time she does, the Defendants charge her a Pay-to-Pay Fee of $5.00. (*Id.* ¶ 15.) This amount was allegedly collected by LoanCare at Lakeview's direction, and such profits were shared by both Defendants. (*Id.* ¶ 48.)

The Plaintiff alleges that this practice of collecting Pay-to-Pay Fees was in violation of the Maryland Consumer Debt Collect Act ("MCDCA") (Count I) and the Maryland Consumer

Protection Act, Md. Code Ann., Com. Law § 13-301(14)(iii) (Count II); represents a breach of the terms of the Mortgage Agreement (Count III); and that the Defendants were unjustly enriched through these transactions (Count IV). She brings this suit under Fed. R. Civ. Pro 23 on behalf of:

> All persons (1) with a residential mortgage loan securing a property in Maryland, (2) serviced or subserviced by Lakeview, LoanCare, or both, (3) and who paid a fee to Defendants for making a loan payment by telephone, [Interactive Voice Response], at an ATM, or the internet, during the applicable statutes of limitations through the date a class is certified.

(ECF No. 1 ¶ 77.) Defendant LoanCare has filed a Motion to Dismiss for Failure to State a Claim (ECF No. 15) seeking dismissal of all claims against it.[2]

## STANDARD OF REVIEW

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmt'y Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted); *see also Paradise Wire & Cable Defined Benefit*

---

[2] The Co-Defendant Lakeview has filed an Answer to the Complaint (ECF No. 16).

4

*Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint, *Iqbal*, 556 U.S. at 678-79, and must "draw all reasonable inferences [from those facts] in favor of the plaintiff," *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, legal conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678-79; *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). Mere recitals of the elements of a cause of action, supported only by conclusory statements do not suffice. *Iqbal*, 556 U.S. at 678. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* When allegations in a complaint have not crossed the line from conceivable to plausible, the plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

## ANALYSIS

**I.     Plaintiff fails to state a claim for violation of the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law, § 14-201 *et seq.* (Count I).**

Count I of the Plaintiff's Complaint alleges that the Defendant violated two sections of the Maryland Consumer Debt Collection Act ("MCDCA"), specifically Md. Code Ann., Com. Law §§ 14-202(8) and 14-202(11).  (ECF No. 1 ¶¶ 92-95.)  Section 14-202(8) prohibits "collectors" from claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist.  *See* Md. Code Ann., Com. Law § 14-202(8).  Section 14-202(11) also makes it illegal to violate §§ 804-812 of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*  *See* Md. Code Ann., Com. Law at § 14-202(11).  The Plaintiff fails to state a claim under either of these sections.

First, the Plaintiff has failed to allege that LoanCare was engaging in debt collection.  To assert a claim under § 14-202, "plaintiffs must first show that defendants were engaging in an 'attempt to collect a debt.'"  *Seghetti v. Flagstar Bank, FSB*, No. ELH-16-519, 2016 WL 3753143, at *2 (D. Md. July 13, 2016) (citing *Covert v. LVNV Funding, LLC*, No. DKC-13-0698, 2013 WL 6490318, at *8 (D. Md. Dec. 9, 2013), *aff'd on other grounds*, 779 F.3d 242 (4th Cir. 2015)).  In this case the Defendant LoanCare is a mortgage loan subservicer.  (ECF No. 1 ¶ 3.)  The MCDCA may apply to loan servicers and subservicers in some contexts.  *See Ervin v. JP Morgan Chase Bank, N.A.*, No. GLR-13-2080, 2014 WL 4052895, at *3 (D. Md. Aug. 13, 2014); *Flournoy v. Rushmore Loan Mgmt. Servs., LLC*, No. PX-19-00407, 2020 WL 1285504, at *8 (D. Md. Mar. 17, 2020).  For example, "[t]he right to collect a debt typically vests when a debtor defaults on the debt," *Crowley v. JPMorgan Chase Bank, Nat'l Ass'n*, No. RDB-15-0607, 2015 WL 6872896, at *8 (D. Md. Nov. 9, 2015), therefore, a loan servicer may have to engage in debt collection to enforce payment obligations of defaulting borrowers.

However, a loan servicer does not exclusively engage in debt collection, and only when it does engage in such activity is it subject to § 14-202. *See Seghetti*, 2016 WL 3753143, at *2 (holding that loan servicer's actions in securing abandoned property were not "debt collection," and therefore, the MCDCA claim failed). In this case, LoanCare performed servicing-related functions with regard to the mortgage loans that Defendant Lakeview serviced, including the Plaintiff's loan. (ECF No. 1 ¶ 3.) The Plaintiff does not allege that she was ever in default. (*Id.* ¶ 57.) LoanCare simply collected her monthly loan payments. (*Id.* ¶ 60.) As pled, this activity is not debt collection.

"A mortgage servicer and/or subservicer is a company that . . . handles the day-to-day administrative tasks of a mortgage loan, including receiving payments, sending monthly statements and managing escrow accounts." (ECF No. 1 ¶ 45.) The MCDCA does not define "loan servicing," however, the Real Estate Settlement Procedures Act ("RESPA") defines "servicing" as:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3). Courts have recognized that "servicing" of this nature is distinct from "debt collection." In *Arostegui v. Bank of America*, No. PJH-13-6009, 2014 WL 1230762, at *6 (N.D. Cal. Mar. 21, 2014), the court found that the FDCPA did not apply to the defendant because the defendant, "as a loan servicer, [was] not a 'debt collector' and the servicing of the plaintiff's loan [was] not 'debt collection.'" Similarly, in *Allen v. Bank of America, N.A.*, 933 F. Supp. 2d 716, 729 (D. Md. 2013), Judge Blake of this Court held that "mortgage servicers" are

7

not "debt collectors" under the FDCPA because they are not "persons who 'attempt to collect debts owed or due,'" and instead should be characterized as "creditors" who "step into the shoes" of the original mortgagee when they begin servicing a mortgage. The MCDCA also does not by its terms purport to regulate loan servicing. The MCDCA "protects consumers against certain threatening and underhanded methods used by debt collectors in attempting to recover on delinquent debts." *Spencer v. Henderson-Webb, Inc.*, 81 F. Supp. 2d 582, 598 (D. Md. 1999). The Plaintiff never alleges that LoanCare was "attempting to recover on delinquent debts." LoanCare's servicing of her loan is simply not conduct regulated by MCDCA § 14-202.

Even if Plaintiff adequately alleged that LoanCare was engaged in debt collection, her claims under §§ 14-202(8) and 14-202(11) still fail to state plausible claims for relief. Section 14-202(8) of the MCDCA provides that "[i]n collecting or attempting to collect an alleged debt[,] a collector may not: . . . (8) Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202(8). To establish a prima facie case under § 14-202(8), a plaintiff must show that the defendant did not possess the right to collect a debt and attempted to collect on the debt despite knowing it lacked the right to do so. *See Allen v. Silverman Theologou, LLP*, No. JFM-14-3257, 2015 WL 2129698, at *7 (D. Md. May 6, 2015) (citing *Pugh v. Corelogic Credco, LLC*, No. DKC-13-1602, 2013 WL 5655705, at *4 (D. Md. Oct. 16, 2013)).

The Plaintiff's Complaint alleges that LoanCare, as a "collector," violated § 14-202(8) because it allegedly "knew that the Mortgage Agreements of Plaintiff and the Class Members did not expressly authorize Defendants to collect Pay-to-Pay Fees, and at most permitted

8

Defendants to assess amounts 'disbursed' to process Pay-to-Pay Transactions," and yet collected such fees from the Plaintiff and other borrowers they serviced. (ECF No. 1 ¶ 93.) The Complaint, therefore, seems to suggest that the Pay-to-Pay Fees were the "debt" LoanCare had no right to collect. While this Court has held that "unauthorized types of charges" are actionable under § 14-202(8), it has done so only in the context of fees *as part of a debt being collected*. *See Flournoy*, 2020 WL 1285504, at *8 (defendant allegedly inflated the debt amount due after default through the inclusion of unauthorized charges); *Brooks v. Cama Self Directed IRA, LLC*, No. JKB-18-229, 2019 WL 418412, at *11 (D. Md. Jan. 31, 2019) (plaintiff contested "the validity of certain portions of the debt" such as "interest and late fees" charged after foreclosure); *see also Allstate Lien & Recovery Corp. v. Stansbury*, 101 A.3d 520, 522 (Md. Ct. Spec. App. 2014) (addressing a "processing fee" of $1,000 as part of an amount of the lien that plaintiff was required to pay to redeem his vehicle). Even if the disputed Pay-to-Pay Fees were unauthorized, as the Plaintiff contends, the MCDCA does not make the charging of unauthorized fees, separate from collection of a debt, actionable on its own.

The Plaintiff also fails to state a claim under MCDCA § 14-202(11), as the Plaintiff has not adequately alleged a violation of the FDCPA. Section 14-202(11) provides that "[i]n collecting or attempting to collect an alleged debt[,] a collector may not: . . . (11) Engage in any conduct that violates §§ 804 through 812 of the federal [FDCPA]." Md. Code Ann., Com. Law § 14-202(11). The Plaintiff alleges that LoanCare violated § 808 of the FDCPA which provides:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1). Even if the Plaintiff's Complaint adequately alleged that LoanCare was engaged in debt collection within the meaning of the MCDCA—allowing this Court to reach the question of whether LoanCare has violated § 14-202(11)—LoanCare's conduct in this case falls squarely within the loan servicing exemption of the FDCPA. Without alleging a violation of the FDCPA, the Plaintiff cannot allege a violation of § 14-202(11) of the MCDCA.

The FDCPA defines "debt collector" as "a business the principal purpose of which is the collection of any debts," or one that "regularly collects or attempts to collect . . . debts . . . ." 15 U.S.C. § 1692a(6). Section 803 provides exceptions to the term "debt collector," including "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due to another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). This exemption does not represent an absolute rule that the FDCPA cannot be applied to loan servicers. If a loan servicer were to acquire a loan *after* it has already gone into default, then such exception does not apply. *Howes v. Wells Fargo Bank, N.A.*, No. ELH-14-2814, 2015 WL 583694, at *48 (D. Md. Sept. 30, 2015) (citing *Zervos v. Ocwen Loan Servicing, LLC*, No. JKB 11-03757, 2012 WL 1107689, at *3 (D. Md. Mar. 29, 2012)). This exemption instead applies where a loan servicer seeks to collect a debt that was not in default when it was acquired for servicing. Again, as explained above, the Plaintiff has not adequately alleged that the Defendant LoanCare was engaged in debt collection (as the Plaintiff was never in default), but

even if she had, LoanCare would meet the requirements for exemption under § 803 of the FDCPA since LoanCare began servicing the Plaintiff's loan before any default.

**II.     Plaintiff fails to state a claim for violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-301(14)(iii) (Count II).**

Section 13-301 of the Maryland Consumer Protection Act ("MCPA") provides that "[u]nfair, abusive, or deceptive trade practices include any: . . . (14) Violation of a provision of: . . . (ii) Title 14, Subtitle 2 of this article, the Maryland Consumer Debt Collection Act." Md. Code Ann., Com. Law § 13-301(14)(iii). Plaintiff alleges that the Defendant LoanCare violated this provision of the MCPA by violating the MCDCA. (ECF No. 1 ¶ 103.) Plaintiff does not allege any other violations of the MCPA. Therefore, because Plaintiff fails to allege a violation of the MCDCA, the Plaintiff also fails to allege a violation of the MCPA, and this claim must be dismissed. *See Dainty v. Wells Fargo Bank, N.A.*, No. TDC-16-2755, 2017 WL 750478, at *5 (D. Md. Feb. 24, 2017), *aff'd*, 708 Fed. App'x 117 (4th Cir. 2018) ("Because [the plaintiff] does not have a plausible claim for a violation of the MCDCA, the Motion to Dismiss the MCPA claim under section 13-301(14) is granted.").

**III.    Plaintiff fails to allege a claim for breach of contract (Count III).**

In Count III of her Complaint, the Plaintiff alleges that Defendants Lakeview and LoanCare became bound as assignees to the mortgage held by the Plaintiff when they became servicer and subservicer of the mortgage loan. (ECF No. 1 ¶ 106.) The Plaintiff further alleges that the Defendants breached their contracts with the Plaintiff and the Class Members when they charged the Pay-to-Pay Fees in violation of the Mortgage Agreement. (*Id.* ¶ 109.) The Mortgage Agreement, and the mortgage agreements of all FHA mortgages, states that "Lender may collect fees and charges authorized by the Secretary [of Housing and Urban

11

Development." (*Id.* ¶¶ 37; Ex. A, ¶ 13, ECF No. 1-1.) This provision, the Plaintiff alleges, incorporated by reference the Secretary of Housing and Urban Development's limits on allowable fees found in the department's handbook. (*Id.* ¶¶ 38, 39.) The Plaintiff alleges that Pay-to-Pay fees are not on the list of permissible fees. (*Id.* ¶ 40.) Therefore, by assessing Pay-to-Pay fees not "authorized by the Secretary," Defendants allegedly violated the uniform covenants of the Mortgage Agreement. (*Id.* ¶ 118.)

As the basis of this Court's jurisdiction lies in diversity of citizenship, under 28 U.S.C. § 1332(a), Maryland law applies. *Hartford Fire, Ins. Co. v. Harleysville, Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). "The basic Maryland rule is that privity of contract is a prerequisite for recovery on that contract." *Safer v. Perper*, 569 F.2d 87, 94 (D.C. Cir. 1977) (citing *Hand v. Evans Marble Co.*, 40 A. 899 (Md. 1898)). To successfully assert a claim for breach of contract, a plaintiff must "allege with certainty and definiteness *facts* showing a contractual obligation owed *by the defendant* to the plaintiff and a breach of that obligation by the defendant." *Cont'l Masonry Co., Inc. v. Verdel Constr. Co, Inc.*, 369 A.2d 566, 569 (Md. 1977) (emphasis added).

Here, the Plaintiff has not adequately alleged that LoanCare owes her a contractual obligation. The Plaintiff does not allege that LoanCare is a signatory or a party to the Mortgage Agreement, which she alleges the Defendants breached. She instead makes the conclusory claim that LoanCare became "bound" as an assignee to the Mortgage Agreement when it became the subservicer of the mortgage loan. (ECF No. 1 ¶ 106.) The Plaintiff alleges that the Mortgage Agreement allows for assignment: it provides that "[t]he covenants and agreements of this Security Instrument shall bind . . . and benefit the successors and assigns

12

of Lender." (Ex. A, ¶ 12, ECF No. 1-1.) The Plaintiff, however, has failed to allege how LoanCare actually became an assignee of the Mortgage Agreement. Absent assignment of the loan to a servicer, no privity exists and a servicer cannot be held liable for breach of contract. *See In re Blackston*, 557 B.R. 858, 872 (Bankr. D. Md. 2016) (dismissing breach of contract claim where servicer was not a party to or assignee of the deed of trust, promissory note, or "Escrow Waiver"); *see also Ayres v. Ocwen Loan Servicing, LLC*, No. WDQ-13-1597, 2014 WL 4269051, at *4 (D. Md. Aug. 27, 2014) (dismissing breach of contract claim where plaintiff alleged "servicing rights" were assigned to servicers, but did not allege that the deed of trust was assigned to servicers).

Even if acquisition of the servicing rights alone was sufficient to bind a servicer to the corresponding loan agreement, the Plaintiff in this case alleges that *Lakeview* acquired the servicing rights to the loan. (ECF No. 1 ¶ 58.) LoanCare, in contrast, is Lakeview's subservicer. A subservicer is a servicer that "does not own the right to perform servicing, but that performs servicing on behalf of the master servicer." *See* 12 C.F.R. § 1024.31. In collecting the Plaintiff's mortgage payments, LoanCare was not enforcing its own rights under the mortgage but rather was an agent receiving mortgage payments on behalf of another. *See In re Residential Capital, LLC*, 501 B.R. 531, 543 (Bankr. S.D.N.Y. 2013) (holding plaintiffs could not allege breach of contract where the loan agreement was created between mortgagor and the mortgagee, and its subsequent assignees, and that the subservicer was not a party to that agreement). The Plaintiff has not alleged facts to suggest LoanCare was a party to the Mortgage Agreement, and therefore, LoanCare cannot be held liable for breach of that contract.

### IV. Plaintiff fails to state a claim for unjust enrichment (Count IV).

Count IV of the Plaintiff's Complaint alleges unjust enrichment. (ECF No. 1 ¶ 128.) Unjust enrichment has three elements: (1) "[a] benefit conferred upon the defendant by the plaintiff;" (2) "[a]n appreciation or knowledge by the defendant of the benefit;" and (3) "[t]he acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007) (citing *Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 113 (Md. 2000)). A "classic example" of unjust enrichment is "the person who, without paying, follows and listens to a tour guide for hire providing a tour to another group, knowing that the tour guide charges for his services." *Dunnaville v. McCormick & Co., Inc.*, 21 F. Supp. 2d 257, 535 (D. Md. 1998).

The Plaintiff has failed to allege facts that suggest such a situation exists here. The Plaintiff claims that the "benefit conferred" by the her onto the Defendant LoanCare was the Pay-to-Pay Fee. (ECF No. 1 ¶ 128.) The Plaintiff also claims that LoanCare knew of and appreciated this benefit. (*Id.*) She then claims that the retention was "inequitable" within the meaning of unjust enrichment's third prong because the Defendants "had no right to collect Pay-to-Pay Fees under the Uniform Mortgages or applicable law." (*Id.* ¶ 129.) Plaintiff's allegations with respect to this third prong are insufficient to state a plausible claim for relief.

First, the statement that the Defendants "had no right" to collect the Pay-to-Pay Fees is a legal conclusion not entitled to this Court's deference. *Iqbal*, 556 U.S. at 678-79; *Papasan*, 478 U.S. at 286 (1986); *Glassman*, 628 F.3d at 146. Second, the Pay-to-Pay Fees were not paid without some benefit exchanged in return. The Pay-to-Pay Fees were not charged any time

14

the Plaintiff made payments on her mortgage. As the Complaint provides, the Pay-to-Pay Fees were only charged when a mortgagor sought to make payments over the phone, by "Interactive Voice Response," or "online," rather than by mail. (ECF No. 1 ¶ 5.) In *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1198 n.3 (11th Cir. 2011), the United States Court of Appeals for the Eleventh Circuit held that a fee levied for the immediate payment of a check was a conferred benefit, negating a claim for unjust enrichment. In that case, the plaintiff requested that a check be cashed immediately, and in return, the defendant bank requested a $6.00 fee. *Id.* "If [the plaintiff] had chosen to deposit the check in her own account and wait for processing, no fee would have been levied." *Id.* The court held that because the bank "conferred an additional benefit on [the plaintiff]," the plaintiff could not show that it had failed to give consideration for her $6.00, and her claim for unjust enrichment failed as a matter of law. *Id.* The Plaintiff fails to allege that LoanCare retained a benefit conferred by the Plaintiff under circumstances in which it was inequitable for it to do so.

## CONCLUSION

For the reasons stated above, the Defendant LoanCare's Motion to Dismiss for Failure to State a Claim (ECF No. 15) is GRANTED and all claims against LoanCare are DISMISSED WITH PREJUDICE

A Separate Order follows.


Dated: December 10, 2020.

____/s/____

                                                          Richard D. Bennett

                                                          United States District Judge